**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**McALLEN DIVISION**

| | | |
|---|---|---|
| M.D.C.G., INDIVIDUALLY | § | |
| AND AS NEXT FRIEND OF | § | |
| N.L.M.C., A Minor | § | |
| AND | § | |
| D.E.G., AS NEXT FRIEND | § | |
| OF J.M.A.E., A Minor, | § | |
| | § | **COMPLAINT** |
| Plaintiffs | § | |
| | § | |
| vs. | § | |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

### A.    Parties

1.    Plaintiffs are aliens from the country of Honduras, currently and lawfully residing in Virginia.  Plaintiff M.D.C.G. is an adult woman. She sues individually, and as next friend for her minor daughter N.L.M.C. Mrs. D.E.G. was not a part of the ordeal made the basis of this suit. She has joined the suit as next friend for her minor daughter, J.M.A.E.  Plaintiff M.D.C.G., her daughter N.L.M.C, and the other girl J.M.A.E. all directly suffered injuries and damages at the hands

of United States Border Patrol Officer/Agent Manzanares.[1]

2.     Defendant is the United States of America (hereinafter sometimes "United States" or "U.S."), who, at all times relevant, employed former U.S. Border Patrol Agent/Officer Esteban Manzanares.  At the time of the events made the basis of this suit, Manzanares was an investigative or law enforcement officer, as that term is defined in 28 U.S.C. § 2680(h), of the U. S. Customs and Border Protection (hereinafter sometimes "CPB" or "Border Patrol"), and/or other agencies of the U.S.  When Officer/Agent Manzanares committed various torts against the plaintiffs, on or about March 12, 2014, he was acting within the scope of his employment with the U.S., and acting under color of law.

3.     Plaintiffs believe that at all times relevant, the U. S. Customs and Border Protection and the Immigration and Customs Enforcement Service were and remain agencies of or under the U.S. Department of Homeland Security, a U.S. Federal Governmental department, establishment, and/or parent agency, comprised of numerous departments and agencies with headquarters in Washington, D.C., and various branch offices throughout the country, including in

---

[1]     Defendant United States of America is aware of the full legal names of each of these

The plaintiffs will provide to the government whatever additional information it requests to confirm their identities, and are seeking only to keep the names of minors and victims of intimate assault out of the public record.

this judicial district.   Each of such agencies/establishments thus constitute a "Federal agency" as that term is defined in 28 U.S.C. § 2671.

## B.     Jurisdiction

4.     On March 12, 2014, CPB agent/officer Esteban Manzanares, while in the course and scope of his employment, and operating under color of law, took into custody plaintiffs M.D.C.G., her minor daughter, N.L.M.C., and the minor girl, J.M.A.E., on the U.S. side of the border with Mexico.   For the next twenty-four hours, he drove them around to various locations in South Texas. Manzanares physically assaulted, knifed, and battered the plaintiffs at various locations and intervals, falsely imprisoned them, and photographed the minors nude, among other torts. This U.S. District Court therefore has original and exclusive jurisdiction over plaintiffs' claims, pursuant to the Federal Tort Claims Act (FTCA), 28 U.S. C. § 1436(b) and §§ 2671-2680.

5.      As discussed more fully below in section "D", conditions precedent, this Court further has jurisdiction because each of the plaintiffs have fully complied with the FTCA and have exhausted their administrative remedies. This Complaint is properly before this Court, and all jurisdictional prerequisites have been met.

## C.     Venue

3

6.     Venue is proper in the Southern District of Texas, McAllen Division under 28 U.S.C. §1402(b).  The acts made the basis of this suit occurred, or at least began, in Hidalgo County, Texas, on the United States' side of the Rio Grande River (also known as the "Rio Bravo del Norte"). The three plaintiffs, M.D.C.G. and two minors, her daughter N.L.M.C, and J.M.A.E., were sitting on the U.S. side of the southern border of the United States, on the side of a dirt road that runs parallel to the Rio Grande, near a bend in the river. This is an unpopulated, brushy, deserted area, with few (if any) distinct and permanent markings or landmarks as to location. While there were no directional markers, and they had no GPS, the plaintiffs know that they had just crossed the border and the Rio Grande into the U.S. and were abandoned by their escort at the river's edge in Hidalgo County. Plaintiffs M.D.C.G., her daughter J.M.A.E., and N.L.M.C, were sitting on the side of the dirt road to rest.  The three plaintiffs were picked up by Officer/Agent Manzanares as he was driving by.

7.     During the time Manzanares was committing various torts against the plaintiffs, he drove them around in his Federal official vehicle and stopped at various locations, all on the U.S. side of the border.  In the absence of more specific information, (which is likely in the possession of the U.S. from the FBI and

Internal Affairs' investigative reports), Officer/Agent Manzanares may have driven one or more plaintiffs out of Hidalgo County, into Starr County, and later back into Hidalgo County. The plaintiffs were restrained in the back of his official vehicle, frightened, sometimes unable to see where they were going. They were unfamiliar with the area.  So they are not sure of all of the places where they were driven by CPB Officer/Agent Manzanares over a several hour period. The plaintiffs could only describe the journey, as they have below and did in their claims. They **do** know they were apprehended in Hidalgo County, Texas at the beginning of their ordeal.

8.     Plaintiff J.M.A.E., a 14-year old minor at the time, was eventually taken separately by Officer Manzanares to his apartment in Mission, Hidalgo County, Texas.   She was tied down, assaulted, and battered for hours, photographed in the nude, eventually discovered by other law enforcement individuals, and escorted to a hospital in McAllen.

### D.     Conditions Precedent

9.     Each of the plaintiffs timely met the administrative pre-suit filing requirements for suing the United States.  All conditions precedent have been satisfied prior to the filing of this lawsuit, including as follows.

10.    Each of the plaintiffs properly filed and presented their administrative claims to the appropriate federal agencies well within two years of accrual.   28 U.S.C. § 2401(b).   Specifically, each claim of each plaintiff was provided to and received by, each of the the appropriate federal agencies listed below on or about April 22, 2015, within two years after said claims had occurred (on March 12, 2014).   At the time of filing and presentment, each claimant provided notice in the appropriate U.S.-approved Form SF-95, along with attachments, pursuant to 28 CFR § 14.2(b)(1), to each of the following agencies of the United States, whose conduct gave rise to the claim:

- U.S. Department of Homeland Security;

- U.S. Customs & Border Protection;

- U.S. Immigration Customs Enforcement; and

- U.S. Federal Bureau of Investigation.

11.    Thereafter *supplemental* documents were provided to the defendant as a courtesy, to wit updated medical records, and supplemental law enforcement records which the plaintiffs did not have at filing.

12.     Currently, all of the foregoing agencies have failed to make any final disposition of any claim of any of the claimants, or any disposition that the plaintiffs are aware of.   More than six months has passed since each of the

plaintiffs' claims were effectively filed/presented, and each of the foregoing agencies have failed to resolve any of those claims. 28 U.S.C. § 2675(a).    The claims are therefore deemed denied *Id.*   This suit is being brought within two years of the time each claim first accrued on or about March 12, 2014, which is well within the prescribed statutory time.   28 U.S.C. § 2401(a).   Accordingly, each plaintiff has complied with all jurisdictional prerequisites and conditions precedent to commencement and prosecution of this litigation.

### E.    Service on Defendant United States

13.   Defendant United States may be served pursuant to FED. R. CIV. P. 4(i), by serving this Complaint and a summons to each of the following, by certified mail, return receipt requested:

a.   Mr. Kenneth Magidson                    **By CMRRR**
     U.S. Attorney
     Southern District of Texas
     Attn:  Civil Process Clerk
     1000 Louisiana, Ste. 2300
     Houston, TX  77002

b.   Mr. Kenneth Magidson                    **By CMRRR**
     U.S.  Attorney
     Southern District of Texas
     Attn:  Civil Process Clerk
     McAllen Office
     Bentsen Tower
     1701 W. Highway 83, #600
     McAllen, TX  78501-5160

c.   General Loretta E. Lynch                **By CMRRR**
     Attorney General of the United States
     U. S. Department of Justice
     950 Pennsylvania Avenue, N.W.
     Washington, D.C. 20530

d.   Secretary Jeh Johnson                   **By CMRRR**
     Secretary of Homeland Security
     Attn:  Civil Process Clerk
     Department of Homeland Security
     245 Murray Lane SW
     Washington, D.D.  20528-0075

e.   Office of the General Counsel           **By CMRRR**
     U.S. Department of Homeland Security
     Washington, DC  20528

f.   U.S. Customs & Border Patrol            **By CMRRR**
     Office of the Chief Counsel
     1300 Pennsylvania Ave. NW
     Washington, DC  20229

g.     Office of the Principal Legal Advisor          **By CMRRR**
       U. S. Immigration & Customs Enforcement
       U.S. Department of Homeland Security
       50 12th Street SW
       Washington, DC  20024

### F.     Facts

14.     From on or about 2008 until his death, Esteban Manzanares was employed by the defendant, through its agency the United States Customs & Border Protection, which was and is a sub-agency or division of the U.S. Department of Homeland Security.  Manzanares was a sworn and licensed U.S. Border Patrol Officer during all times relevant to these claims.

15.     In March of 2014, CBP Officer/Agent Manzanares was assigned to a post along the Rio Grande River Sector, in what is believed to be near the town/CDP (census designated place) of Abram, in Hidalgo County, Texas. Plaintiffs believe that Manzanares was affiliated with the Rio Grande Valley Sector (Texas), CBP McAllen Station, during the relevant time.

16.     As mentioned above, on or about March 12, 2014, the three plaintiffs, M.D.C.G., her daughter, N.L.M.C (then 15 years old), and J.M.A.E. (then 14 years old), who had been traveling together, were sitting on the side of a dirt road in Hidalgo County. The dirt road runs parallel to the Rio Grande, and follows

a bend in the river. The plaintiffs had just recently crossed the Rio Grande and the border without authorization, and were sitting on the side of the dirt road on the U.S. side, resting.  Officer/Agent Manzanares was driving by in his official U.S. Government vehicle when he spotted the plaintiffs.  He stopped, asked whether they were alone, and when they said they were, Manzanares told the plaintiffs to come with him.  He told the plaintiffs that they were in his control and custody, and were to follow his instructions.

17.    Officer Manzanares was in uniform, armed, operating a federal vehicle, and in possession of multiple communication devices. The CBP either issued this equipment, or had actual knowledge he was in possession of this equipment. Plaintiffs M.D.C.G., her daughter N.L.M.C, and the girl J.M.A.E., each surrendered without incident to Manzanares, with the understanding he was armed and was a federal law enforcement officer.

18.    CBP Officer Manzanares advised the adult plaintiff M.D.C.G. that she and the two minor girls would be transported to a facility for mothers and their children.  He then drove around making several stops. On or about the second stop he placed black restraint bands on the wrists of M.D.C.G., her daughter N.L.M.C., and J.M.A.E., and put them in the back of his official vehicle. Manzanares eventually made a stop at what appeared to be a government

building, which was occupied by other individuals, including personnel that appeared to be uniformed CBP employees. He left the restrained plaintiffs in the back of the vehicle.

19.     After driving further for an unknown distance, Manzanares stopped in an unpopulated area.  He took the three plaintiffs out of the vehicle.  He taped their mouths and wrists, and told them he was doing so due to a secondary order he had received.

20.     CBP Officer Manzanares went through several gates during the several hours he was transporting the plaintiffs from place to place.  He used keys that are believed to have been given him by CBP to operate the gates. The plaintiffs saw at least one other CBP uniformed employee along the roadway, during the time they were being transported through gates.

21.     CBP Officer Manzanares eventually stopped the vehicle in a new area.  He forcibly removed two of the plaintiffs, M.D.C.G. and her daughter N.L.M.C., who were still restrained, one at a time from the truck.

## Facts Specific to the Adult Plaintiff, M.D.C.G.

22.     CBP Officer Manzanares dragged M.D.C.G. out of the truck, and forced her to the ground. He engaged in wrongful and excessive force for several minutes, and struck Ms. G about the face and body.  Until this point, she had not

resisted, but at this point she began to struggle.   He then dragged her up a hill, and engaged in further excessive force.  He struck her, kicked her, and strangled and choked her, and twisted her neck.  Plaintiff M.D.C.G. believed she was going to be killed by CBP Officer Manzanares, and feared for her life.  At some point during the assault and battery, she became temporarily unconscious or significantly disoriented by Manzanares' strangling and choking her.  When she was aware again, Manzanares had M.D.C.G. in a hold so that she could not resist. In addition, her disorientation made it difficult for her to resist, while he intermittently assaulted her, beat her, and touched her in an offensive manner.

23.    At some point, Manzanares pulled out a knife, and began to cut M.D.C.G.'s arms and wrists.  She was completely awake during the time he was slicing her arms and wrists, and believed he was torturing her, trying to kill her slowly, or possibly make it look as if she had killed herself. At some point, M.D.C.G lost consciousness for a while.

24.    When M.D.C.G. came to, Manzanares had left her for awhile and she could hear Manzanares beating and assaulting her daughter N.L.M.C.  Ms. G was aware she was bleeding, and tried to do something to control it.  Realizing that CBP Officer Manzanares had weapons, that she and the girls were restrained, that he had been overpowering them, and that their only chance was to get

assistance, M.D.C.G. then made the difficult decision to leave the scene and run for help.

25.   At some point much later – her injuries and disorientation make her unsure how much time elapsed – M.D.C.G. eventually came upon CBP Officers. She doesn't know how she got their attention, whether by camera surveillance or otherwise. But eventually she encountered a CBP officer, who drew his gun on her and questioned M.D.C.G. at gunpoint.   She told the officer what had happened, why she was disheveled, her clothes torn, and why she was covered in blood.   She answered all his questions, and told him that the person who had done this to her, was still doing it to her daughter and to another girl. When asked who was doing this, M.D.C.G. told the officer the perpetrator was "dressed just like you" (the CBP officer questioning her).     The CBP Officer began to communicate by radio and call for assistance. Other CBP-dressed individuals began to arrive, followed by emergency medical personnel.

26.   Plaintiff M.D.C.G. was placed in an ambulance and transported to a hospital in McAllen.  She was placed under guard at the hospital, in the custody of CBP.  It was some time before M.D.C.G. learned what happened to her daughter, N.L.M.C.  She was not permitted to see her daughter until what she believes was the third day.

## Facts Specific to the Minor Plaintiff  N.L.M.C.

27.    N.L.M.C. watched while her mother forcibly and roughly removed from the official vehicle.  15-year-old N.L.M.C. watched, restrained, while CBP Officer Manzanares used excessive force on her mother, M.D.C.G., and watched the injuries her mother was sustaining.  At some point, Manzanares dragged her mother away from the truck.  N.L.M.C. heard the beatings and the sounds of distress from her mother while they were away.

28.    CBP Officer Manzanares then returned to the truck, and forcibly and roughly removed N.L.M.C.  She struggled while he strangled her, choked her, and twisted her neck in a manner that led her to believe he was trying to break her neck.  N.L.M.C. believed she was going to be seriously injured, and possibly die, at the hands of Manzanares. At some point, N.L.M.C was either temporarily unconscious or significantly disoriented after she was strangled, choked, and her neck was twisted as if to break it.  When she regained consciousness, N.L.M.C. did not let him know.  She acted as if she were dead to attempt to limit Officer Manzanares' actions.

29.    Even while she acted unconscious or dead, Manzanares continued with the use of wrongful and excessive force against N.L.M.C.  He continued to touch and assault her in an offensive and provocative manner.

30.     Officer Manzanares manipulated 15-year-old N.L.M.C.'s clothing to gain access to her breast and vaginal area, and touched her provocatively.  She was restrained, so there was nothing she could do about it.   Manzanares manipulated and touched her breast and vaginal areas with his hands and other body parts. At some point, Manzanares walked around N.L.M.C., taking pictures of her semi-unclothed and exposed body.  She was unable to protect herself from this documentation because she was still restrained, and because she was still continuing to look lifeless, and pretend that she was unconscious or dead, hoping to save her own life.

31.     He then used his knife and cut her left arm.  N.L.M.C. was awake and conscious while her arm was being cut, but continued to act unresponsive in an attempt to save her life.  Apparently tiring of N.L.M.C., CBP Officer Manzanares covered N.L.M.C with dirt, debris, and brush, and left the area.  Sometime after the officer had not returned, and she had heard him drive away, N.L.M.C. dug herself out from under the brush and dirt that Manzanares had used to cover her. She began to look for her mother.  Her injuries and disorientation make her unsure how much time elapsed; but N.L.M.C. eventually found another individual dressed as a CBP officer.  She was placed in an ambulance, and transported to the hospital.

32.    N.L.M.C. was placed under guard at the hospital, in the custody of CBP, and was not permitted to see her mother until what she believes was the third day.

### Facts Specific to the Minor Plaintiff  J.M.A.E.

33.    Manzanares eventually returned to the vehicle without the minor N.L.M.C. or her mother M.D.C.G. He refused to tell then-14-year-old J.M.A.E. what he had done with them despite her pleas, and would not tell her what he intended to do to her. But J.M.A.E. was now in fear for her life because she had witnessed how rough he had been with her friends. She had seen his use of wrongful and excessive force, and could tell they were being injured in the process. She believed that by returning to the vehicle without them, Manzanares had probably killed, or at least seriously injured, her two friends.

34.    CBP Officer Manzanares drove J.MA.E. around for a while. He eventually took her to a deserted area, tied her up to a tree, and left her for a few hours.  J.MA.E. is not sure for how long.  Manzanares eventually returned to get her.   He took her to an apartment, which she later learned was his own apartment in Mission, Texas.  Manzanares cut away J.M.A.E.'s clothing, forcibly bathed her, and tied her to a bed.

35.    Manzanares photographed the 14-year-old J.M.A.E. in the nude. Although she struggled to stop it, because of the restraints she was unable to cover or protect herself from this documentation.

36.    On more than one occasion, and over the course of several hours, and despite her pleas, Officer Manzanares took physical liberties with J.M.A.E, including touching her provocatively and offensively, fondling her, penetrating her vaginally, and other assaults while J.M.A.E. was restrained.

37.    J.M.A.E. recalls that at least on one occasion, CBP Officer Manzanares left the apartment and returned.  She doesn't know for how long as her ordeal had been going on but believes it was several hours.  She remained restrained to the bed the entire time after she was forcibly bathed.

38.    Hours later, J.M.A.E. heard a loud pounding on the door.  She believed that other individuals had arrived to cause her even more harm.  Shortly after the loud knocking on the door and loud voices, she heard gunfire and explosions of gaseous chemicals in the apartment.  She was later told that Office Manzanares was fatally injured when he killed himself with his own weapon.

39.    When other law enforcement individuals entered the apartment, they found J.M.A.E. still tied and restrained to the bed. She was transported to the hospital.  She was placed under guard at the hospital, and was not permitted

to see her family for a month.   She was in the custody of federal agencies/authorities for a prolonged period of time.

40.    The plaintiffs are given to understand and believe, based on information released to them and in press reports from unknown sources, that one or more Federal agencies of defendant U.S. (believed to be the U. S. Immigration and Customs Enforcement Service (ICE) and/or the U.S Federal Bureau of Investigation (FBI)) knew of CBP Officer Manzanares having abused persons in his custody and control, and that there had been investigations into abuse and his wrongful use of excessive force. The prior allegations included complaints of attacks on women in a physical, mental, and/or sexual manner. Based on the foregoing, including the conduct of Manzanares, this amounted to negligent retention of Officer/Agent Manzanares. In view of the prior circumstances, and wrongful and abusive conduct, the defendant U.S., including through its Federal agencies ICE and the FBI, failed to supervise its employee, officer, and agent, which amounted to negligence under the circumstances.

41.    It has further been reported that the CBP Sector/Station in question has been placed on notice by other governmental agencies and non-governmental agencies about a direct failure of managerial level employees to enforce polices, regulations, statutes, and/or internal

protocol regarding the excessive use of force, the handling of unaccompanied minors, and women.  Specifically, this notice goes directly to the claims outlined by this plaintiff (and any investigation, control, enforcement and/or action/inaction by ICE and/or the FBI) and are fully incorporated into her FTCA claim herein.

### G.    Liability Under Federal Tort Claims Act (FTCA)

42.    At all times relevant hereto, defendant, the United States of America, is a sovereign governmental entity, which has been engaged in, among other things, controlling access into its sovereign territory, and preventing entry, presence, and residence of undocumented individuals within its borders.  Among other agencies, the defendant performs these activities by and through its agencies/divisions -- the U.S. Border Patrol, the U.S. Department of Homeland Security, the U.S. Bureau of Customs and Border Protection, and/or the U.S. Department of Justice, acting within the course and scope of their agency/affiliation with the United States.

43.    At all times relevant, Officer/Agent Manzanares was an investigative or law enforcement officer as defined in 28 U.S.C. § 2680(h) of defendant's Federal agency, the CPB, which was in turn an agency or subdivision(s) of the U.S. Department of Homeland Security, a department of the U.S.; thus, Manzanares

was acting within the course and scope of his employment with the defendant at all relevant times.

44.     Plaintiffs plead claims under the FTCA for "injury, loss of property, or personal injury or death, caused by the wrongful act or omission of any employee of the U.S. Government, while acting within the scope of his office or employment, under circumstances where the United States, if a private  person, would  be liable to the plaintiffs in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1)

45.     Defendant United States has waived its sovereign immunity and has consented to be sued pursuant to the FTCA.  28 U.S.C. § 1346(b), 2671-2680.

46.     While acting within the course and scope of his agency and employment with the United States, Officer/Agent Manzanares maliciously, and/or wrongfully, and/or otherwise tortuously detained, restrained, battered, assaulted, verbally abused, and violated in other mental and physical methods, including, but not limited to, force that was intended to be deadly force on the plaintiffs, even though they showed no resistance to Agent Manzanares' demands.  These acts caused life-altering physical and mental trauma and injuries to the plaintiffs.

47.    Although the FTCA generally exempts from liability intentional torts by it employees, including assault and battery, that exemption does not apply to the intentional torts alleged in this Complaint, which arise out of the commission of such torts by "investigative or law enforcement officers of the United States Government." 28 U.S.C. § 2680(h). Manzanares was an investigative or law enforcement officer who was empowered to execute searches, to seize evidence, and/or to make arrests for violations of Federal law; and, he was working for the U. S. Border Patrol, operating under color of law, at the time of such intentional torts.  Therefore, the FTCA applies to provide liability for his torts, even those which were intentional, *id.,* and without regard to whether Manzanares' activities were related to search(es), seizure(s) or arrest(s).  *Millbrook v. U.S.,* ____ U.S. _____, 133 S. Ct. 1441, 1445-46 (2013).

48.    In the alternative, plaintiffs plead under the FTCA that Officer/Agent Manzanares negligently injured plaintiffs even though they showed no resistance to his demands, thereby causing them life-altering physical and mental injuries. Manzanares negligently, wrongfully, and tortuously caused the injuries to the plaintiffs. So this claim is also for all forms of negligence and wrongful conduct in the broadest terms allowed for torts of an investigative or law enforcement officer of a United States agency in causing injury of another.

49.     Plaintiffs also bring this FTCA claim against defendant, the United States of America, for the negligence of its employees within the following Agencies: CPB, U. S. Department of Homeland Security; ICE, and the FBI; and any and all of its employees for negligently supervising, training, investigation, and/or retaining Officer/Agent Manzanares.

50.     These acts by Officer/Agent Manzanares upon the plaintiffs were intentional, wrongful, and negligent. Specifically, Manzanares was an employee of the defendant and acting with the course and scope of his office or employment, and had a duty to exercise ordinary care and act reasonably and prudently when detaining persons.  Under the laws of the State of Texas, where the acts occurred, a private person would be liable to the plaintiff for these acts or omissions.  Under 28 U.S.C. § 1346(b), the United States is liable to plaintiffs for their damages below for the personal injuries and damages described below.  28 U.S.C. § 2674.

### Count 1 – Liability Under the FTCA for Assault and Battery

51.     A person commits an assault[2] under Texas law if he:

(1)     intentionally, knowingly, or recklessly causes bodily injury to another;

---

[2] Historically, assault and battery were two separate torts, but today the terms are used together or interchangeably in Texas law to refer to conduct defined as "assault" in the TEXAS PENAL CODE.  The Penal Code definition taken from Section 22.01 above has been held to apply in civil as well as criminal cases.

(2)     intentionally or knowingly threatens another with imminent bodily
        injury; or

(3)     intentionally or knowingly causes physical contact with another when
        he or she knows or should reasonably believe that the other will
        regard the contact as offensive or provocative.

*See Wal-Mart Stores, Inc. v. Odem,* 929 S.W.2d 513, 522 (Tex. App.--San Antonio

1996, writ denied); *Childers v. A.S.,* 909 S.W.2d 282, 292 (Tex. App.--Fort Worth

1995, writ denied).  Based on the facts of this case, each of these definitions was

met by Manzanares' actions, even though to prove assault the plaintiffs need only

show one.

       52.    As to the first element, as discussed in detail above in Section F,

paragraphs 14-42, Manzanares intentionally, knowingly, and recklessly caused

bodily injury to each of the plaintiffs.  He dragged them out of his truck forcibly,

even though they were not offering resistance, dragged M.D.C.G. up a hill. He

roughed them up, knifed M.D.C.G. and her daughter, N.L.M.C., strangled and

choked them, twisted each of their necks as if attempting to kill them, and

rendered them unconscious for brief periods.  He didn't stop causing bodily injury

to M.D.C.G. until she appeared unconscious or dead, and then went on to his next

victim.  After inflicting bodily injury on her for some time, Manzanares eventually

left N.L.M.C. for unconscious or dead, and covered up her body with dirt, leaves,

and debris, no doubt hoping she wouldn't be found for some time.

53.     As to the second element, Officer/Agent Manzanares intentionally and knowingly both caused and threatened each plaintiff with bodily harm, although none had resisted being taken into custody or was fighting him.  By the strangling and choking of M.D.C.G. and her minor daughter, N.L.M.C., to the point that they would temporarily lose consciousness, and twisting their necks as if to break them, they thought their bodily harm would be that each would die.  He stabbed and knifed M.D.C.G. and N.L.M.C., and stopped only after each appeared to have lost consciousness or be dead. When Manzanares returned to the truck, having left the other two women in a deserted area, and after J.M.A.E. heard what had been happening, she assumed they were dead and that she was next. She feared for her life.

54.     Officer/Agent Manzanares further intentionally and knowingly engaged in physical contact with each plaintiff when he knew or should reasonably believe that the plaintiffs would regard the contact as offensive or provocative.  He was rough and offensive with each plaintiff, and engaged in provocative physical contact with the two minors. Indeed, he had to restrain each plaintiff when he engaged in contact with them so they could not resist or run away.

55.     For these reasons, Manzanares assaulted each of the plaintiffs, as that term is known under Texas law.  He did so as an employee of the United States, in the course and scope of his employment, and under color of law.  He was also an investigative or law enforcement officer of the United States.  28 U.S.C. § 2680(h).  Therefore, under the FTCA, the United States is liable for his actions, 28 U.S.C. § 1346(b), 2671-2680, and each of the plaintiffs injuries and damages as later set out in section "H" in this Complaint on damages.

### Count 2 – Liability Under the FTCA for False Imprisonment/False Arrest

56.     Under Texas law, the elements of false imprisonment are:

(1)     willful detention,

(2)     without consent, and

(3)     without adequate justification or authority of law.

*See Randall's Food Markets, Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex. 1995).  *See also Wal-Mart Stores, Inc. v. Rodriguez,* 92 S.W.3d 502, 506 (Tex. 2002); *Martinez v. English*, 267 S.W.3d 521, 529 (Tex. App. -- Austin 2008, pet denied).

57.     A person is falsely imprisoned" under Texas law when she is willfully detained, without legal justification, against her consent, whether such detention be effected by violence, by threat, or by any other means that restrains a person from moving from one place to another.  1 TEXAS P.J.C. § 6.1.

58.     One means of committing a false imprisonment is by **false arrest**. TEXAS PENAL CODE § 20.01.   A false arrest occurs when a person makes an arrest without justification or authority of law. *Clark v. Heard,* 538 F. Supp. 800, 806 (S.D. Texas 1982). A false arrest always results in false imprisonment. *Whirl v. Kern*, 407 F.2d 781, 793 (5th Cir. 1968).

59.     Even though law enforcement officers are authorized to detain or effect even warrantless arrests of persons under certain circumstances, the privilege can be lost if the manner of detention is unreasonable, as here.  *Dillard Dep't Stores, Inc. v. Silva,* 148 S.W.3d 370, 372 (Tex. 2004).  It need only be shown that the detention itself was unlawful.

60.     In this case, Officer/Agent Manzanares willfully detained each of the plaintiffs, without their consent, and without adequate justification or authority of law.  When CBP Officer/Agent Manzanares detained the plaintiffs, and did not take them directly to a CBP or other governmental facility, his detention became unlawful.  He had their initial consent to detain them and take them to a CBP facility – not to assault and physically abuse them, not to use deadly force, and certainly not to photograph the minors without clothing or partially clothed.  The fact that Manzanares had to keep them in restraints during the entire time they were with him is further evidence they were falsely imprisoned. There is no

adequate justification or authority of law for Manzanares' detention of the plaintiffs so he could assault and batter them, torture them, and nearly kill them.

61.     The plaintiffs' false imprisonment ordeal didn't end when they were rescued from Manzanares.  For what they believe was three days, even after their harrowing ordeal, M.D.C.G. and N.L.M.C. were separated, and not permitted to see each other. They were given limited information about each other.  Again, even after the ordeal she'd experienced at the hands of their fellow federal agent, the minor plaintiff J.M.A.E. was kept under guard and not permitted to be with her family for nearly a month.

62.     For these reasons, Manzanares falsely imprisoned each of the plaintiffs, as that term is known under Texas law.  He also falsely arrested them, as that term is understood under Texas law, because he apparently never had any intention of detaining them lawfully to take them directly to a CBP detention center or office; rather he detained them for his own personal purposes, to assault and torture them.  Manzanares did so as an employee of the United States, in the course and scope of his employment, and under color of law.  He was also an investigative or law enforcement officer of the United States.  28 U.S.C. § 2680(h).  Therefore, under the FTCA, the United States is liable for his

actions, 28 U.S.C. § 1346(b), 2671-2680, and each of the plaintiffs injuries and

damages as later set out in section "H" in this Complaint on damages.

### Count 3 – Liability Under the FTCA for Intentional and Negligent Infliction of Emotional Distress

63.    The elements of intentional infliction of emotional distress (IIED) in

Texas are:

(1)    the defendant acted intentionally or recklessly;

(2)    his conduct was extreme and outrageous;

(3)    the actions of the defendant caused the plaintiff emotional distress; and

(4)    the emotional distress suffered by the plaintiff was severe.  *See Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993).

64.    While the plaintiffs have a cause of action for assault, and for their

damages for mental anguish for their injuries and the assault, they also have a

cause of action for intentional infliction of emotional distress.   Many of the

injuries intentionally and deliberately inflicted by Manzanares during his brutal

and drawn out torture of each plaintiff will remain mental scars years after

physical injuries diminish.   Each of the Plaintiffs' emotional distress as a result of

their ordeal is severe.   This is in part because *none of the injuries they sustained*

*were accidental*.   Manzanares methodically and deliberately assaulted, strangled,

choked, fondled, provocatively touched, and tortured each woman or girl, one by one, over several hours, in several locations, and in several ways.  At most times, each plaintiff heard and/or witnessed Manzanares assaulting and torturing her friends.  For at least one minor plaintiff, J.M.A.E., Manzanares assaulted and tortured her for nearly a 24-hour period.  For the adult plaintiff, M.D.C.G., she had to watch and listen while he assaulted, abused, provocatively touched, and photographed unclothed, her minor daughter.  The minor plaintiff N.L.M.C. had to listen to Manzanares abuse, beat, and torture her mother.

65.    These kinds of assaults, which include provocative and offensive touching while the other person is restrained and helpless, are about one person demonstrating his power and dominion over another; a deliberate attempt to humiliate and degrade another person -- each plaintiff.  The plaintiffs' injuries didn't happen by accident.  And their trauma did not end when they were rescued from Manzanares.  M.D.C.G. and her minor daughter, N.L.M.C, were separated for three days while the other could only imagine the state the other was in after their ordeal.  Even after the nightmare she'd experienced, the minor then-14-year-old plaintiff J.M.A.E., who'd been tortured for nearly 24 hours, was not permitted to be with her family for a month. Each plaintiff has severe post-

traumatic stress disorder (PTSD) as a result of her harrowing ordeal with Manzanares.

66.    The U.S. is also liable for the intentional infliction of emotional distress by Officer Manzanares on the plaintiffs because it is a "claim arising out of assault, battery, false imprisonment, and false arrest."  28 U.S. C. § 2680(h).

67.    Manzanares intentionally inflicted emotional distress on the plaintiffs while and as an employee of the United States, in the course and scope of his employment, and under color of law.  He was also an investigative or law enforcement officer of the United States.  28 U.S.C. § 2680(h).  Therefore, under the FTCA, the United States is liable for his actions, 28 U.S.C. § 1346(b), 2671-2680, and each of the plaintiffs injuries and damages as later set out in section "H" in this Complaint on damages.

### Count 4 – Liability Under the FTCA for Negligence of Agent Manzanares

68.    Agent Manzanares had a duty, while acting in the course and scope of his employment with the U.S. Government, to exercise reasonably prudent and ordinary care of a CBP officer in the exercise of his duties in detaining, restraining, transporting, and in his treatment of others, including the plaintiffs.  He also had a duty to refrain from proximately causing personal injuries and damages to others, and to refrain from wrongful, negligent, or reckless acts or omissions. He further

had a duty to act with care to follow appropriate policies and procedures, and not to allow a situation to develop in which he would, through lack of due care, injure another human being.

69.    Manzanares did not exercise reasonable care, nor did he behave as an ordinary prudent CBP officer.   Manzanares was negligent, wrongful, and reckless, and breached his duty of care on March 12, 2014, when he detained the three plaintiffs without taking them directly to a CBP or other appropriate government station; when he used excessive force against the plaintiffs; when he roughly treated them and caused them injury even though they did not resist his initial detention; when he wrongfully, offensively, and provocatively touched them while they were restrained; when he choked, strangled, or twisted their necks; when he cut them with a knife;  and when he placed himself in a position to wrongfully and unjustifiably use excessive or offensive force with the plaintiffs, which resulted in their injuries.   A description of these events is above in section F, paragraphs 14-42.   The breach of Manzanares' duties, and his wrongful and reckless conduct against the plaintiffs, proximately caused injuries and damages to the plaintiffs, in the past and future, as set out in section "H" of this Complaint on damages.

70.     The United States is liable for his conduct under the Federal Tort Claims Act, 28 U.S. C. § 2671, et seq., and each of the Plaintiffs injuries and damages as later set out in section "H" in this Complaint on damages.

### Count 5 – Liability Under the FTCA for Negligence of Officers & Agents Other than Manzanares

71.     Plaintiffs allege that the United States, by and though other agents or employees, was negligent, and that negligence was a direct and proximate cause of each of the plaintiff's injuries.  The plaintiffs further plead that the United States of America was negligent in one or more of the following manners that was a proximate cause and/or significant contributing factor the to the plaintiffs' injuries:

a.     Negligent Hiring of Esteban Manzanares prior to March 12, 2014;

b.     Negligence  of CBP sectors/stations and officers, including of Esteban Manzanares, prior to and including on or about March 12, 2014;

c.     Negligent retention of CBP officers, including of Esteban Manzanares, prior to and on or about March 12, 2014;

d.     Negligent failure, including by the FBI/ICE, to perform appropriate investigation of CBP Officer Esteban Manzanares prior to March 12,

2014, particularly in view of prior complaints/evidence of his abuse, assault(s), and/or excessive use of force by Officer Manzanares with regard to females while previously performing authorized duties or otherwise on-duty;

e.      Negligent failure to have accurately and/or adequately reported results of investigation concerning, and/or taken appropriate prospective/remedial action with regard to, CBP Officer Esteban Manzanares prior to March 12, 2014, including by the FBI/ICE;

f.      Negligence in the enforcement of policies, procedures, regulations, and/ or other directives prior to and on or about March 12, 2014;

g.      Negligent use of independent contractors or outside agencies to conduct otherwise fundamental processes relating to hiring, supervision, and/or retention of CBP employees prior to and on or about March 12, 2014;

h.      Negligent failure to have ensured that CBP officer Esteban Manzanares was not alone, and/or did not have isolated access to, females, including migrants/immigrants, while performing his job on or about March 12, 2014, particularly in view of prior complaints/evidence of abuse, assault(s), and/or excessive use of force by Officer Manzanares with regard to other females while previously performing authorized duties or otherwise on-duty; and

i.    All other federal and state legal arguments, theories,

doctrines, regulations, statutes and/or law/common law that is or may become

applicable to this case or the facts herein after the plaintiffs have had a full

opportunity to conduct discovery according to the Rules of Federal Civil

Procedure.

72.    The United States is liable for his conduct under the Federal Tort

Claims Act, 28 U.S.C. § 2671, et seq, and each of the plaintiffs injuries and

damages as set out below in section "H" in this Complaint on damages.

### H.    Damages

73.    As a direct and proximate cause of the intentional torts and/or

negligence of Officer/Agent Manzanares, and/or the negligence of officers/agents

other than Manzanares, all as set forth above in the course and scope of his/their

employment with the Defendant United States, plaintiff, M.D.C.G, Individually,

suffered in the past and will, with reasonable medical probability, continue to

suffer, severe injuries, including but not limited to: past and future physical pain;

past and future mental anguish and suffering; past and future medical, hospital,

and health care expenses; past and future physical disfigurement; past and future

physical impairment; past lost wages and loss of future earning capacity; past and

future loss of consortium; property damage; and, all other damages permitted under the FTCA and Texas law.

74.    As a direct and proximate cause of the intentional torts and/or negligence of Officer/Agent Manzanares, and/or the negligence of officers/agents other than Manzanares, all as set forth above in the course and scope of his/their employment with the defendant United States, plaintiff, M.D.C.G, As Next Friend of N.L.M.C., a Minor, suffered in the past and will, with reasonable medical probability, continue to suffer, severe injuries, including but not limited to: past and future physical pain; past and future mental anguish and suffering; past and future medical, hospital, and health care expenses; past and future physical disfigurement; past and future physical impairment; past lost wages and loss of future earning capacity; past and future loss of consortium; property damage; and, all other damages permitted under the FTCA and Texas law.

75.    As a direct and proximate cause of the intentional torts and/or negligence of Officer/Agent Manzanares, and/or the negligence of officers/agents other than Manzanares, all as set forth above in the course and scope of his/their employment with the Defendant United States, plaintiff, D.E.G., As Next Friend of J.M.A.E., a Minor, suffered in the past and will, with reasonable medical probability, continue to suffer, severe injuries, including but not limited to: past

and future physical pain; past and future mental anguish and suffering; past and future medical, hospital, and health care expenses; past and future physical disfigurement; past and future physical impairment; past lost wages and loss of future earning capacity; past and future loss of consortium; property damage; and, all other damages permitted under the FTCA and Texas law.

76.     The damages sought by each plaintiff are within the jurisdictional limits of this Court and, to the extent required to be pleaded by Texas Law, each plaintiff hereby seeks monetary relief over $1,000,000, but not in excess of the amounts claimed by each of them, respectively, in their forms SF-95.

### I.     Prayer

For these reasons, each of the plaintiffs demand judgment against defendant United States of America for the following:

a.     Actual damages in an amount which exceeds the threshold necessary for this Court's jurisdiction, but which does not exceed the amount claimed in each of their forms SF-95.

b.     Costs of suit.

c.     Post-judgment interest.

d.     All other relief to which the plaintiffs deem themselves entitled, and that the court deems just and appropriate.

36

Respectfully submitted,


By :   /s/ Mark D. Clore
          Mark D. Clore
          State Bar No. 04405100
          S.D. Tex. Federal ID No. 2752255
          Clore Law Group LLC
          49 Immigration Street,
          Charleston, SC 29412
          Telephone:  (843) 722-8070
          Facsimile:    (843) 722-9881
          Email: Mark@clorelaw.com

**ATTORNEY IN CHARGE FOR**
      **ALL PLAINTIFFS**

          Christine Lockhart Poarch
          Texas Bar No. 24013052
          Virginia Bar No. 47106
          POARCH LAW FIRM, PC
          203 S. College Avenue
          Salem, VA 24153
          (540) 387-1005
          FAX: (540) 444-0323